Seward, J.
(orally).
This case is submitted to the court upon the pleadings and the evidence. It is a suit brought to recover for taxes alleged to be be due from Anna Atcherly to the treasurer in the sum of $696.59. The plaintiff says that personal taxes to that amount stand charged against the defendant, Anna Atcherly, on the duplicate of taxes of this county, placed in the hands of this plaintiff for collection by the auditor of said county, which said taxes are due and unpaid; that said defendant is indebted to said E. T. Rugg, as treasurer of said county, in the sum of $696.59, the • sum charged against defendant as tax as aforesaid. And the plaintiff prays judgment for this amount.
Anna. Atcherly, for her answer, says for a first defense that she denies each and every allegation in the petition contained; and for a second defense that she is not indebted to the treasurer of Licking county, Ohio, in the sum of $696.59 for taxes .due *320 and unpaid by her, or in the sum of $34.83 penalty on said sum of $696.59 as alleged in plaintiff’s petition.
This answering defendant further says that said sum of $696.59 has been unlawfully charged to her by the auditor, upon a claim that this answering defendant had and held a mortgage upon lands in Perry county, Ohio, to the amount of $-, which mortgage the said auditor claimed had not been returned by her to the assessor of her ward or township for taxation. She denies that she was the owner of any mortgage on lands in Perry county or in any other county, except mortgages that had been fully returned by her for taxation. She further says that in 1890, on the 26th day of November, she purchased from one John J. Fullerton three several tracts of land in the township of Thorn, Perry county, Ohio, one tract containing 38 acres and 84 rods, another tract containing (then follows a statement of the amount of real estate), for which she paid the sum of $5,100. That on the said 26th day of November, 1890, she leased said land to John J. Fullerton for the period of seven years for the sum of $450 per year, payable $225 on the 26th of May and $225 on the 26th of November of each year; that on said 26th day of November, 1890, said Anna Atcherly also entered into a contract with said John J. Fullerton to sell and reconvey said property to him on or before the 26th day of November, 1897, upon the condition that the said. John J. Fullerton had paid to her the sum of $5,100, and upon, the condition that said John J. Fullerton had faithfully kept and performed all the conditions of the lease made aforesaid. But the defendant says that said John J. Fullerton did not keep the covenants and agreements of said lease, and that he did not pay back said $5,100 or .any part thereof, during the life of said contract or the existence of said lease, but she says that afterward, to-wit, on the 26th day of May, 1898, she did sell and convey said land to said John J. Fullerton, and that she received a mortgage from him for the sum of $5,100, which- mortgage she says she fully reported to the assessor and upon which she paid taxes from the 26th day of May, 1898.
She further says that it is claimed by the auditor that during the time prior to the making of the deed in May, 1898, that the transaction between this1 ansiwering defendant and John J. ■Fullerton was a mortgage and that it was the duty of this answering defendant to have returned the same for taxation. But she *321 says that such is not the case, but that the sale on November 26th, 1890, was a Iona fide sale and a tona fide purchase on her part, and that she was the true and lawful owner of said real estate from November 26, 1890, up to the 26th day of May, 1898; that she paid the taxes on said property, or caused them to be paid, during all that time, in Perry county, where the land was listed for taxation.
The testimony is conflicting in some regards, but it shows that Anna Atcherly loaned to John J. Fullerton, prior to this 26th day of November, 1898, some fifteen hundred dollars; that John J. Fullerton became involved, and was sued before a justice of the peace in this county, which was the county of Perry; that he came up here about the 26th of November, 1898, and went to Mr. Smythe’s office; that he told Mr. Smythe there that he was being sued, and he claims that he wanted to know if he couldn’t make a deed to Miss Atcherly for this real estate, and hold his creditors at bay, for the purpose of protecting the property from the grasp of his creditors.'
It is claimed on the part of Miss Atcherly that she bought this real estate outright. There was one Hite who had a mortgage on this real estate for fifteen hundred dollars, prior in time and equity to the mortgage of Miss Atcherly; and it is claimed that Miss Atcherly was to take up this Hite mortgage; the amount due on that mortgage was about fifteen hundred and ninety dolr lars. Fullerton says that th:s transaction was simply for the purpose of keeping his creditors at bay; that Miss Atcherly agreed'to take the title to this real estate and reconvey it to him at the end of seven years; that a lease was to be made back to Fullerton for the property, and he was to retain possession of it and farm it, but Miss Atcherly was to take up the Hite mortgage, pay off the Hite note, take the mortgage and .hold that mortgage and her mortgage for $2,500; that she was to hold the title to that real estate until such time as Fullerton could pay her back the $5,100 and interest. Fullerton claims that the rental agreed to in this lease ($450 per year) was simply the interest on her note; that this was done to cover up and keep the creditors from coming on to his real estate, and that the rental was fixed so it would amount to about 8 per cent interest on the $5,100.
Fullerton says this was not all done the same day; that he came here and got Mr. Smythe to draw the papers; Miss Atcherly *322 came there and they agreed upon the ters; that Mr. Smythe drew the papers and he came back the next day with his wife, and the papers were all signed up, the deed and lease delivered, and the contract for re-purchase entered into between Miss Atcherly and Fullerton. This deed bears date the 26th of November, and there isn’t any controversy about that feature of it in the evidence. It bears date of the 26th of November, 1898, and the contract likewise bears date the 26th of November, 1898, as well as the lease.
Miss Atcherly says that she never understood that this was anything other than a straight purchase by her of that land; that she bought it outright; and Fullerton claims that it was given to her for the purpose of keeping creditors at bay, and that she was to receive interest on the amount of $5,100 that she had invested. This $5,100 is made up of the $2,500 to Miss Atcherly, the $1,500 to Hite, $600 to B. G. Smythe for attorney fees, and $400 in cash, that Miss Atcherly gave Fullerton, he says, some time before this 26th day of November, 1898, to pay the accrued interest on the Hite mortgage; that there was about that much interest on it, making the amount of the Elite mortgage at that time about $1,900, and Miss Atcherly says she gave him the $400 to pay he interest on the Hite note, and that was evidently paid on it. At any rate, those amounts go to make up this amount of $5,100.
It is claimed that she never saw the farm, or went on it-to see what it was before she bought it; but says she was there before she took the mortgage; that she had had a mortgage on it a number of years before, and was there before she made any loan upon it, and examined the property, and stayed over night. And she says that she paid the taxes, and Fullerton says that he paid the taxes. Mr. Fulton, who was acting for Miss Atcherly towards the last part of this matter, says that he sent his individual check to pay those taxes at one time. Fullerton says that he was on friendly terms with the treasurer and made arrangements to pay those taxes. Now, the court wants to say that if this matter depended upon the testimony of John J. Fullerton — the court hasn’t very much confidence in that man, because he admits that he went into this transaction for the purpose of keeping this property from -his creditors. He admits that he knew that it was not a bona fide transaction; as far as he was concerned; that b.e *323 came up here and wanted to keep his creditors at bay, and desired to put his property in such a shape that his creditors couldn’t get at it; to cover it up in some shape; and the court hasn’t very much confidence in that kind of a man’s testimony. But, he says some things that are corroborated by the circumstances which are proven in the case. Is it possible that the treasurer would hold those taxes for him to pay until the treasurer would become personally liable to pay them himself? The court does not think so. Miss Atcherly admits that at times he did pay them, but says it was deducted from the rent — from the $450 of rent; that that amount was deducted.
But if Miss Atcherly was purchasing this property as an investment, why would she, on the same day, enter into a contract to re-convey it to Fullerton at the end of seven years. ' There are some circumstances that the court can not understand, and that is one of them. If she was purchasing this property for an investment, why she should enter into a contract to reconvey to the grantor in seven years from that time. That might be, and be consistent and all that. The court can only explain it upon the theory that Fullerton was involved at that time, and she was being annoyed by some litigation. At the end of five years, in 1895, Miss Atcherly brought a suit in forcible entry and detainer against Fullerton to get him off of this land — to get possession of it. Now, that circumstance on the part of Miss Atcherly, if she knew that this was a mortgage and not.a deed, is thoroughly inconsistent with good reason and sound common sense. If she knew that this was a mortgage (and Fullerton says she did know it) why should she bring suit in forcible entry and detainer to get possession of this property? Here is a suit brought by Miss Atcherly, who Fullerton says knew that this transaction was done for the purpose of keeping his creditors at bay, and, if she knew that, she knew that she only had a mortgage upon that property. Mr. Fulton says she never intimated anything else to him than that she had the title to this real estate. She didn’t'want to re-convey it; but she did it under his advice because there waskime troublesome litigation growing out of it.
All the authorities hold that a deed, absolute in form, made for the purpose of securing a debt or a loan, is a mortgage. It is nothing but a mortgage. It can not be anything else. That is decided, in the 28th Ohio State, in two cases, and the decisions *324 in almost all the stages go to that extent; bnt, there is a decision in the 44th Ohio State which holds that, while it is a mortgage in equity, it isn’t a mortgage at law. That is the case of Kemper v. Campbell, 44 Ohio State, 210. T. C. Campbell took a deed from a creditor of his and loaned some more money at the same time on real estate in Cincinnati; I think about $18,000 was the consideration in that deed, absolute in form; and Campbell, a criminal lawyer, kept this deed off of record and didn’t put it on record until just before the expiration of six months required to have a deed put on record. In the meantime an assignment was made of this real estate, and it was claimed by the assignee that he had the -title to this real estate; and Campbell admitted that this was a mortgage, although a deed absolute in form — he admitted that it was a mortgage; but he went into court and claimed that he was under no obligation to file that deed with the recorder until the expiration of six months; and the Supreme Court say that, while it was a deed in form, it was a mortgage, but the law governing the filing of deeds for record governed it in this respect, and Mr. Campbell was decreed to have his lien as against an assignee — a preferred claim. That only has reference to the filing of the deed for record, but the court there say that, while it may be a mortgage in equity, in law it is a deed.
■If Miss Atcherly paid the taxes, and the court believes she did, and if she is to be believed at all, she thought that this was a straight, bona fide sale of this real estate to her, and the court is prepared to believe her in the place of Fullerton. Now, the court understands that the circumstances here are peculiar — where the contract was entered into to re-convey — and the court thinks that that was at least the same day or the day after, and a part of the samé transaction; and a lease was made and Fullerton continued to retain possession of that farm, and never moved off of it. It is said that he built a summer kitchen on it. "What kind it was, the court does not know, the testimony did not show, or what valúe. It is said that he Jiad jjome tiling done on the farm. These things were introduced to show that he still owned the title to that land. - A bill for the tiling whs sent to Miss Atcherly, and she refused to pay it. That is a circumstance-that might indicate that she didn’t think she owned the title to that real estate. -But, suppose she did own the title-;had this tenant-of hers the right to go on- and' make-improve-i *325 ments without her consent ? And hadn’t she a right to say, if he did make them without her eousent, that she wouldn’t pay for them? She certainly did. There is no evidence tending to show that she agreed that these improvements should be made. While Fullerton is corroborated by some eireustanues, Miss Atcherty is corroborated by some circumstances, and the court would not believe Fullerton if it were not for the circumstances in which he is corroborated; and the court will enter a judgment for the defendant.